GREENLIEF WEBB *v.* R. M. RICHARDSON.

*Evidence. Pedigree. Deposition. Deed. Possession, Actual, Constructive, Adverse. Declarations of Claim made off the Land.*

The fact as to who was the witness' father and grandfather, and the fact of their death, and the date of the grandfather's death, it having occurred many years previously, come within the principle that pedigree may be proved by near relatives from reputation in the family, and are admissible in evidence when material.

The fact being proved that R. once held a deed of the land in question from the original proprietor, and that the witness deeded the same land to the defendant, it was material for the witness to testify that R. was his grandfather, and that the witness' father was the son of R., and that both were dead, and when they died, and that it was before the date of the witness' deed to the defendant, in order to connect the title of the witness with that of his grandfather by inheritance, as this connected the defendant's chain of title from the original proprietor.

It would not necessarily be error to admit a deposition containing this evidence, under a general objection to the whole "for lack of substance," although some portions of the deposition would have been excluded if particularly pointed out and objected to.

Where the deponent did not state how he obtained his knowledge of these facts, the presumption is that it was derived in the manner that facts of this character are usually learned among near relatives, rather than that it came from an illegitimate source.

The ruling of the court "that, in the absence of any evidence discrediting or contradicting the deposition, it was sufficient evidence that the deed of Henry W. Booth (the witness) conveyed a portion of the title of Reuben Booth," the grandfather, was error, objection having been made to the admission of the deposition and to its sufficiency; as by this ruling it must be understood in connection with other facts stated in the exceptions that the court took the question, as to the truth of the deposition, from the jury.

The defendant did not show a chain of title back to the original proprietor, but showed that his grantors entered into possession in 1835, and cut timber and claimed to own the land. *Held,* that the question whether this entry interrupted the plaintiff's possession should have been submitted to the jury under proper instructions, in connection with the plaintiff's evidence of continuous possession, under those through whom he

54

claims. The error of the court in not submitting this question to the jury was not cured, under the circumstances of the case, by the special verdict, the jury independent of that entry having failed to find fifteen years continuous adverse possession by the plaintiff and those under whom he claims.

A party who has once commenced a possession of land by actual entry, and acts of occupancy upon it, may continue to possess it during intervals when not upon it, hence he may claim it during intervals as well as when actually upon the land doing acts of possession; and the fact of his making such claim is provable by evidence of his declarations made at the time, in the same manner and to the same effect as if made while on the land doing an act of possession.

The kind and frequency of the acts of occupancy necessary to constitute a continuous possession, depend somewhat on the condition of the property, and the uses to which it is adapted in reference to the circumstances and situation of the possessor; and partly on his intention. If in the intermediate time between the different acts of occupancy there is no existing intention to continue the possession, or to return to the enjoyment of the premises, the possession, if it has not ripened into a title, terminates, and cannot afterward be connected with a subsequent occupation so as to be made available toward gaining title; while such continued intention might, and generally would, preserve the possession unbroken.

It is a general principle applicable to possessory titles, that where one takes a deed of real estate and places it on record, and enters into possession under it, and actually occupies a part of the premises which the deed purports to convey, he is presumed to be in possession of, and to claim the whole to the limits defined in his deed; and the mere fact that an entire undivided tract thus conveyed by such deed was formerly made up of different parcels lying contiguous to each other, with the title or color of title of the several parcels derived at some former period from different sources, does not take it out of the general rule as to constructive possession, although in such deed, conveying the entire tract, the several parcels of which it is composed are separately described.

Should the presumption of such claim be overcome, and it be made to appear that, during such possession, the occupant did not claim the land beyond his actual possession, the constructive possession would not embrace it, but would be restricted to the limits of the claim.

TRESPASS, *q. c. f.* Plea, the general issue. Trial by jury, September term, 1868, STEELE, J., presiding. Special verdict for the defendant. Exceptions by the plaintiff.

This suit was commenced January 18, 1866. The land in question is lot 64, 2d div., Brunswick, except the north twenty acres. It was agreed that the plaintiff was in possession of the premises in 1865, when the defendant entered and cut timber thereon to the value of $22.37, and that if the plaintiff should recover he should recover that sum with interest from the date of the writ.

The plaintiff did not claim to hold the land by any title derived by deed or chain of deeds from the original proprietor, but before resting offered evidence tending to prove that his possession was earlier than the defendant's, and also to prove that he had acquired the land by fifteen years adverse possession.

The defendant duly proved that under the charter and draft of lots in Brunswick, the original proprietor of said lot 64 was Elisha Sill; that Sill duly deeded it October 31, 1765, to Reuben Booth, and that on the 1st of December 1852, Henry W. Booth deeded it to the defendant. The defendant, against objection, not to the form but to the lack of substance, read the deposition of Henry W. Booth, in which he testified that he was a son of Walter Booth, who was a son of said Reuben Booth, and that his father and grandfather both died prior to the date of the said deed from Henry W. Booth to the defendant, and stated what other children his grandfather had, and the age of his father and grandfather at their death. To the admission of this deposition, and the ruling of the court that, in absence of any evidence discrediting or contradicting it, it was sufficient evidence that the deed of Henry W. Booth conveyed a portion of the title of Reuben Booth, the plaintiff excepted.

Under this ruling of the court there remained no further question but the defendant owned an undivided portion of the lot, unless the plaintiff had acquired it under the statute of limitations, and the only question submitted to the jury was whether the plaintiff and his grantors had acquired the land by fifteen years adverse possession. The plaintiff to establish his possessory title relied upon the following deeds and writings, or certified copies of the record thereof:

1. Deed of April 10, 1822, from Reuben Hawkins to Seth Cushman, conveying all of lot 64 except the north 20 acres. A deed was also in evidence proving that, on the same day, Reuben conveyed the north 20 acres to his son Joseph Hawkins.

2. Deed June 29, 1825, Seth Cushman to Joseph Hawkins conveys, among other things, the land in dispute.

3. Mortgage back from Joseph Hawkins to Seth Cushman, of same premises at same date.

4. Copy of record of an assignment of a mortgage. The assignment is dated November 3, 1831, and is from Seth Cushman to David Hopkinson.

5. Copy of record of an assignment of a mortgage. The assignment is dated May 19, 1832, from David Hopkinson to Sol. Downer.

6. Deed of September 9, 1839, Sol. Downer to Michael Flynn,

conveys land in dispute, and other lands, conditioned that deed should be void unless Flynn pays certain notes.

7.   Deed of August 7, 1849, from Sol. Downer to John D. French, of the "Hawkins Farm," and, also, the part of 64 here in question.

8.   Deed of February 25, 1861, from John D. French to Sol. Downer's estate of the lot 64, except north 20 acres.

9.   Deed under proper probate proceedings, from Sol. Downer's estate, to Warren C. French, of the land in question, March 26, 1863.

10.   Deed of same, November 28, 1863, from Warren C. French to Greenlief Webb, the plaintiff.

The defendant claimed that the plaintiff could avail himself of no possession prior to 1822, because he had no color of title, but the court ruled that inasmuch as there was a good line of marked trees around the lot, though not marked by Hawkins, that if Hawkins occupied a part of the lot and claimed the whole of it prior to 1822, that time should be reckoned in determining whether the plaintiff's grantors acquired the lot by possession.   The defendant also claimed that the plaintiff could avail himself of no possession prior to 1839, because the assignments, as proved by the record, did not connect themselves with the Hawkins mortgage, and the non-production of the original assignments not being excused or explained, no secondary evidence could be received on the subject ; but the court ruled otherwise, and, upon uncontradicted parol evidence, tending to show that Sol. Downer became the owner of the Cushman mortgage against Joseph Hawkins, and that Hawkins surrendered the premises to him, the said Downer, the court ruled that the case stood precisely as if there was a regular and formal written deed of assignment in proof.   It appeared that Sol. Downer re-entered for a breach of the condition of his deed of September 9, 1839, to Flynn, Flynn having failed to pay the notes, and such re-entry was prior to Downer's deed to John D. French.   The defendant proved that in 1835, Hutchins & Wells entered upon this lot and "logged it," cutting off a large amount of pine timber, that they claimed to own it under deeds they had had for some years, which were shown, and the defendant also showed deeds from Hutchins & Wells to him.   The chain

of deeds, under which Hutchins & Wells claimed the land, did not extend back to the original proprietor, but the defendant claimed that the entry by his grantors, Hutchins & Wells, in 1835, would interrupt the plaintiff's possession, and the court so ruled, to which the plaintiff excepted. This lot (64) has never been enclosed, and the larger part of it has never been improved, but the plaintiff's evidence tended to show that the plaintiff's grantors, in his said line of deeds from Reuben Hawkins, had used different parts of it at different times and seasons for wood, timber, pasture and crops, continuously since before 1814, and had during the same period occupied the other lands covered by the said deed. The defendant's evidence tended to prove the contrary.

In March and April, 1800, Reuben Hawkins purchased the rights of Stephen Noble and Zadoc Clark, one from Joseph Wait, the other from Hazen French, and these made what in some of the deeds in the plaintiff's chain of colorable title is called the " Hawkins Farm ; " adjacent to this farm, and within sight of the buildings, was this lot 64.

The plaintiff was permitted, against the defendant's objection, to prove that, prior to 1822, Reuben Hawkins, while working on lot 64, called it his " possession lot," and explained that he was claiming and getting it by possession, to which the defendant excepted. The plaintiff offered also to show that, at other times prior to 1822, the said Hawkins said the same things, when not on lot 64, but at his house and in sight of it, and pointing it out, which testimony the court excluded, to which the plaintiff excepted.

The plaintiff requested the court to instruct the jury that whenever the plaintiff's grantors were occupying the Hawkins farm, by virtue of a deed or mortgage on record, which covered by its terms (as many or all of them did) not only the original farm but also lot 64, the possession would constructively cover lot 64, even though that lot was not actually occupied at all. The court refused to so charge, to which the plaintiff excepted. The court told the jury to find, especially, whether the plaintiff had proved fifteen years possession prior to the interruption of 1835, or sub-

sequent to it, and if neither, then whether, leaving the interruption out of consideration, and treating it as no interruption, the plaintiff had made out fifteen years possession. The jury found against the plaintiff in each respect.

*H. & G. A. Bingham,* for the plaintiff.

*Ray & Ladd* and *Henry Heywood,* for the defendant.

The opinion of the court was delivered by

PECK, J. The ground of objection on the part of the plaintiff to the deposition of Henry W. Booth was, as the case states, "*the lack of substance.*" The import of this objection is that the facts testified to by the deponent were not material to the case, or that they had no legal tendency to establish the defendant's title. In this sense the objection is without foundation. It appeared that Elisha Sill was the original proprietor of lot No. 64 in question, and that he deeded it to Reuben Booth, October 31, 1765, and that Henry W. Booth deeded it to the defendant, December 1, 1852. The fact that the deponent's father was the son of Reuben Booth, and that Reuben Booth died in 1800, and that the deponent's father died in 1841, as testified by the deponent, was material to connect the title of Henry W. Booth with that of his grandfather Reuben Booth, by inheritance; as it completed the defendant's chain of title from the original proprietor. But it is objected in argument that some of the facts, to which the deponent testifies, he could have known only by reputation, and that some of them occurred before his birth, he giving his own age as forty-seven when the deposition was taken in 1866. There is nothing inconsistent with the idea that the deponent speaks from personal knowledge of the death of Walter Booth, his father, and of the time when it occurred. Even if there were some portions of the deposition which should have been excluded if particularly pointed out and objected to, it would not necessarily be error to admit the deposition against a general objection to the whole. But however this may be, the fact as to who was the witness' father and grandfather comes within the principle that pedigree may be proved by near

relatives from reputation in the family. The fact and date of the death of the deponent's grandfather may be proved in the same manner, especially after such lapse of time. As to the objection that the deponent does not state how he obtained his knowledge, as the deposition was taken with notice, thus affording the plaintiff an opportunity to cross-examine, we should presume the deponent's knowledge was derived in the manner facts of this character are usually learned among near relatives, rather than that it came from an illegitimate source. What the deponent says as to the other children of his grandfather is immaterial, and could not have prejudiced the plaintiff. The action being trespass, the extent of the defendant's interest in the premises, whether entire or as tenant in common with others, heirs of his grandfather, and if so in what proportion, is immaterial to the result of the suit. Therefore whether this portion of the deposition would be objectionable or not were it material, it is not necessary to decide. The deposition was properly admitted. But it is insisted that the court erred in ruling " that in absence of any evidence discrediting or contradicting it, it was sufficient evidence that the deed of Henry W. Booth conveyed a portion of the title of Reuben Booth." If by this it is to be understood that the court took the question as to the truth of the deposition from the jury, and ruled as matter of law that the deposition was sufficient for that purpose, it was error. But if nothing more is intended by it than that the statements contained in the deposition, if true, were sufficient to give that effect to the deed, this objection is not well founded. If nothing further appeared on the subject, possibly the exceptions might bear the latter construction ; but it is immediately stated that " under this ruling of the court there remained no further question, but the defendant owned an undivided portion of the lot, unless the plaintiff had acquired it under the statute of limitations, and the only question submitted to the jury was, whether the plaintiff and his grantors have acquired the land by fifteen years adverse possession." From this it must be understood the point was taken from the jury, and as there is nothing in the case to show that the plaintiff waived his right to go to the jury on the facts the deposition tended to prove, but on the contrary excepted to the ruling

of the court, not only as to the admission of the deposition, but also as to the decision as to its sufficiency and legal effect, we can not avoid the conclusion, as the exceptions are drawn, that the county court erred in taking this question entirely from the jury.

The ruling of the court, as matter of law, that the entry of Hutchins and Wells, in 1835, was an interruption of the plaintiff's possession, must be understood as deciding that it was such an interruption as arrested the running of the statute of limitations. It is not every trespass upon one's possession of real estate that will have that effect; more especially when committed by a stranger to the title, as Hutchins & Wells were. Whether their act was such an interruption of the possession as the court assumed it to be, was not exclusively a question of law, but ought to have been submitted to the jury, under proper instructions, in connection with the evidence on the part of the plaintiff tending to show a continuous possession by those under whom the plaintiff claims.

In reference to the exception to the decision excluding the declarations of Reuben Hawkins, it is to be noticed that the evidence on the part of the plaintiff tended to show, among other things, that those under whom he claimed, in his line of deeds, from that of Reuben Hawkins, dated in 1822, had used different parts of the lot in dispute, at different times and seasons, for wood, timber, pasture and crops, continuously since before 1814, and had, during the same period, occupied other lands covered by said deeds, which the case shows were contiguous to lot sixty-four in dispute. We understand that the evidence of Reuben Hawkins' declarations, made prior to 1822, while working on lot sixty-four, which was admitted, as well as the evidence of his declarations made during the same period when not actually on the lot, which was excluded, had reference to the time after the commencement of his possession which the plaintiff's evidence tended to prove. The case is argued on both sides upon that hypothesis, and we so treat it, although the case does not in terms so state. The court properly admitted proof of the declarations of Reuben Hawkins, made while working on lot sixty-four, to the effect that he called it his possession lot, and that he was claiming and getting it by possession. But the court was in error in excluding " evidence to show

that at other times, prior to 1822, the said Hawkins said the same things when not on lot sixty-four, but at his house and in sight of it, and pointing it out." To constitute a continuous possession it is not necessary that the occupant should be actually upon the premises continually. The mere fact that time intervenes between successive acts of occupancy does not necessarily destroy the continuity of the possession. The kind and frequency of the acts of occupancy, necessary to constitute a continuous possession, depend somewhat on the condition of the property, and the uses to which it is adapted in reference to the circumstances and situation of the possessor, and partly on his intention. If, in the intermediate time between the different acts of occupancy, there is no existing intention to continue the possession, or to return to the enjoyment of the premises, the possession, if it has not ripened into a title, terminates, and can not afterwards be connected with a subsequent occupation so as to be made available toward gaining title ; while such continual intention might, and generally would, preserve the possession unbroken. This principle is tersely stated in the civil law, thus : a man may retain possession by intention alone, yet this is not sufficient for the acquisition of possession. Hence, declarations of the party, in such case made during such intermediate time, when neither upon the premises nor doing any act thereon, are material evidence to show such present existing intention. There are many cases where, in case it is material to show what was the intent of a party at a particular time, the declarations of the party may be shown in his own favor, declaratory of that intent, if made at the time in question. Upon this ground, the declarations of Reuben Hawkins, which were excluded, ought to have been received. Again, without these declarations which were excluded, the plaintiff's evidence tended to show that Reuben Hawkins had been in continuous possession. It is clear that his declarations claiming the land, made at any time during the period the evidence tended to show such continuous possession, were admissible, also, to show the adverse character of that possession, whether made on the lot in dispute or off it. Nor is it necessary, to the admissibility of such declarations of Hawkins, that they should be made on any portion of the farm or tract of land which he owned, pos-

sessed or claimed. If the admissibility of such declarations is put upon the ground of declarations constituting part of the *res gestæ*, they are admissible, as the *res gestæ* is not confined to a particular act of occupancy done upon the premises, but is the continual possession, which includes the successive acts of occupancy. Since a party who has once commenced a possession of land, by actual entry and acts of occupancy upon it, may continue to possess it during intervals when not upon it, he may claim it during such intervals as well as when actually upon the land doing acts of possession; and the fact of his making such claim is provable by evidence of his declarations made at the time, in the same manner and to the same effect as if made while on the land, doing an act of possession. Such declarations to show the adverse character of the possession are quite as much in the nature of *facts* as in the nature of a medium of proof. The payment of taxes on real estate is not an act of possession, but is always regarded as admissible in favor of the party paying, as tending to show that he claimed the premises. It is the act of the party himself, and is in the nature of a declaration, on his part, that he claims the premises; yet it was never supposed that in order to enable the party to have the benefit of such proof for that purpose, in his own favor, that the payment of the taxes should be made while actually on the land.

The remaining exception on the part of the plaintiff is to the denial of the request of the plaintiff's counsel to charge the jury. The lot in question was adjacent to the land purchased by Reuben Hawkins in 1800, and in sight of the buildings on that land. The land so purchased in 1800 by Reuben Hawkins was occupied by him and on which it appears, as we understand the case, he resided, and which, in some of the deeds in the plaintiff's chain of title, is called the Hawkins' farm. From what is stated as to Reuben Hawkins' possession of lot sixty-four, it must be taken that his occupancy of lot sixty-four, whatever it was, was in connection with his occupancy of the land above mentioned, purchased by him in 1800. Subsequently the deeds in the plaintiff's chain of title to the successive occupants, many or all of them, as the case shows, embraced the original Hawkins farm, already

mentioned, and this lot sixty-four, in the same deed. It is a general principle, applicable to possessory titles, that when one takes a deed of real estate, and places it on record, and enters into possession under it, and actually occupies a part of the premises which the deed purports to convey, he is presumed to be in possession of the whole to the limits defined in his deed. To the extent he actually occupies, his possession is said to be actual, and as to the residue, constructive. It is presumed, in such case, that the grantee claims to the limits of his deed; and that claim, coupled with his actual possession of a part, and consequent constructive possession of the residue, is operative to gain title to the whole, if continued the requisite period of fifteen years. The mere fact that an entire undivided tract thus conveyed by such deed was formerly made up of different parcels lying contiguous to to each other, with the title, or color of title, of the several parcels derived, at some former period, from different sources, does not take it out of the general rule as to constructive possession, although in such deed, conveying the entire tract, the several parcels of which it is composed are separately described. We find nothing in the case sufficient to rebut this common presumption, or to warrant the denial of the request of the plaintiff's counsel to charge the jury that "whenever the plaintiff's grantors were occupying the Hawkins farm, by virtue of a deed or mortgage on record, which covered by its terms not only the original farm, but also lot sixty-four, the possession would constructively cover lot sixty-four, even though that lot was not actually occupied at all." This, however, is upon the presumption already stated, that the occupants were claiming to the extent of their deed. Should this presumption be overcome, and it be made to appear that, during such possession, the occupants did not claim lot sixty-four, the constructive possession would not embrace it, but would be restricted to the limits of the claim. The instruction asked for was improperly refused.

It is claimed, on the part of the defense, that the ruling of the court as to the legal effect of the entry of Hutchins and Wells, in 1835, upon the plaintiff's possession, even if erroneous, was cured by the special verdict, the jury, independent of that entry, having

failed to find fifteen years' continuous adverse possession by the plaintiff and those under whom he claims. Had that ruling not been made till the evidence in the case was closed, and the counsel apprized, before the argument to the jury, of the questions that would be submitted to the jury, the verdict would show that the plaintiff was not prejudiced by that ruling. But, as we understand the exceptions, this ruling was made while the defendant was putting in his evidence, or at least before the plaintiff's evidence in reply was closed. The plaintiff might have had evidence which would have been available to him to strengthen his case but for this decision, but which would be entirely useless, and even improper to be offered in the face of this decision, and which for this reason was not offered. Under such circumstances, it would be a surprize on the plaintiff, and to his detriment, for the court, in the charge, virtually to retract the decision by which the plaintiff had been guided in putting in his evidence, and then submit an unexpected issue to the jury, which in one event would foreclose the rights of the plaintiff; an issue which he had not had a legal opportunity to try. Although it may be that in this case the plaintiff was not thus misled, yet it does not sufficiently appear that he was not prejudiced by this ruling, to warrant the conclusion that the error is cured by the verdict.

The exceptions taken by the defendant, the prevailing party, we have not noticed.

The judgment of the county court is reversed, and a new trial granted.