Hillsborough, }
June 6, 1916. }

### FLORENCE A. PEASE v. NANCIE E. WHITNEY.

The rule that one claiming title under a deed of one lot of land has no color of
title to another lot, has no application as between a grantor and grantee where
the grantor has misled the grantee to believe that the deed covers both lots
and knew that he entered under the deed claiming to be the owner of both lots.

Whether acts of actual occupation show an open, hostile and notorious possession
is a question of fact depending not merely upon the acts themselves but upon
the character of the land and its adaptability to use and improvement.

A possession which is adverse and known by the true owner to exist is equivalent
to a possession which is adverse, open, and notorious.

Abandonment is not conclusively established by a temporary absence which is
reasonable under the circumstances.

On the issue of the character of an adverse occupant's possession of land, its value
and acreage may be relevant.

WRIT OF ENTRY, dated August 12, 1913. Trial by jury and
verdict for the plaintiff. Transferred from the September term,
1915, of the superior court by *Sawyer*, J. The plaintiff claims title
to a certain lot of land in Hillsborough, designated for convenience
at the trial as lot C, which she supposed was included in the des-
cription contained in a deed to her from the defendant dated
July 3, 1885, but which was not so included. The deed in fact
conveyed a tract of land adjoining the lot in question. The
defendant was the owner of lot C at that time and still has the
legal title to it, while the plaintiff claims title by adverse posses-
sion. The land is adapted in part to cultivation, in part to pas-
turage, and in part to use as a timber lot. It contains about ten
acres. At the time of the deed it was partly enclosed by a fence or
stone wall. There were no buildings upon it. There was evidence
that the defendant pointed out to the plaintiff the boundaries of
the land to be conveyed as including lot C, and that the plaintiff
supposed lot C was included in her deed.

In 1886 the plaintiff cultivated and planted a portion of lot C and
cut some bushes on it. For several years she used it as a pasture.
This pasturing was repeated in 1897 and 1898. The fruit from the
trees was harvested by the plaintiff and she grafted some of the
trees. She also paid the taxes on the lot. She spent a substantial
part of 1894, 1895, and 1896 in Florida, and for one year since 1898
she was not upon the lot. The defendant's motion for a directed
verdict was denied subject to exception. Other facts and excep-
tions are stated in the opinion.

*Doyle & Lucier* (*Mr. Lucier* orally), for the plaintiff.

*Holman & Smith*, for the defendant.

WALKER, J. The principal question which is presented by the defendant's exception to the refusal of the court to order a verdict in her favor, is whether the evidence or the evidentiary facts reported warranted the jury in finding a verdict for the plaintiff. Previous to the date of the defendant's deed to the plaintiff, the evidence tends to show that the parties by their agents went upon the premises which the plaintiff proposed to buy and the defendant proposed to sell, and the boundaries were pointed out by the defendant; that the plaintiff at least was led to understand that that part of the land or farm designated as lot C,—which is the land now in controversy,—was included within the boundaries pointed out by the defendant or her authorized agents; that with this understanding she accepted the deed, paid the agreed consideration for the three pieces of land which together contain about twenty-four acres, and thereupon entered into possession under her deed, which, though somewhat indefinite in the description of the premises, did not in fact include lot C, and that the defendant, in consequence of what might be termed her fraudulent purpose to mislead the plaintiff by conveying to her less land than was included in the bounds shown to her, knew that the plaintiff entered under her deed claiming to be the owner of lot C as well as of the other two pieces of land. There is no evidence that the plaintiff's entry was accompanied by a purpose to occupy any land not covered by her deed, and it could be inferred from the transaction under which the deed was delivered to her that the defendant knew this fact. But it is urged that the plaintiff did not enter under color of title to lot C, and that, therefore, her possession is limited to such part of it as she actually occupied. *Boynton* v. *Hodgdon,* 59 N. H. 247; *Bellows* v. *Jewell,* 60 N. H. 420. As the doctrine of color of title is based upon the idea that it presumptively amounts to notice to the true owner of the extent of the tenant's claim, which is essential to the acquisition of title by adverse possession, no sound reason is perceived for its technical application, when the true owner has actively induced the belief in his grantee that the deed covers a particular piece of land, upon which the latter has entered. Though lot C is not covered by the deed, the defendant had as much information of the extent of the plaintiff's claim, as she would have had if it were specifically described in the deed. The evidence would authorize that

finding.  The fact of the defendant's knowledge of the claim does not rest upon a mere presumption arising from a deed, but upon evidence that the defendant was necessarily cognizant of the quantity of land the plaintiff was claiming under her deed.  The defendant cannot insist that she had no notice of the extent of the claim, which was in accordance with her own statement relating to the boundaries of the land, which she agreed to sell to the grantee and which the grantee innocently supposed the deed conveyed.  The jury would be fully warranted in finding that the grantor knew that the grantee entered under the deed claiming ownership to the boundaries in view of which the transaction took place.  See *Lee* v. *Wheat*, 111 S. W. 307.  This conclusion is not in conflict with cases holding that ordinarily one claiming title under a deed of one lot of land has no color of title to another lot (*Enfield* v. *Day*, 7 N. H. 457; *Hale* v. *Glidden*, 10 N. H. 397), for the reason they are not analogous cases in that notice to the owner of the extent of the claim was not established as an actual fact, and his denial of knowledge would not be equivalent to a breach of common honesty, as it is in this case.

It is also argued in behalf of the defendant that the acts of actual occupation on lot C do not show that the plaintiff's possession was open, hostile and notorious in the sense that one would infer from them that she was assuming to be the sole owner of the land.  But this is principally a question of fact depending not merely on the acts of ownership but upon the character of the land and its adaptability to use and improvement.  The land was susceptible of agricultural use in connection with the other land conveyed by the defendant to the plaintiff and was held and used to some extent for that purpose.  Whether the acts of possession were such as to notify the owner that the plaintiff was in the actual occupation of this lot is a question that was properly submitted to the jury, especially in view of the further fact that the defendant lived near the land and probably knew what the plaintiff was doing, and did not object.  Her acquiescence in the acts of the plaintiff, a question ordinarily determined by a presumption from the notoriety of the acts, is here inferable directly from the evidence.  Knowing what the plaintiff's claim was when she entered, the defendant also knew she was asserting her possession and claim of ownership by acts upon the land inconsistent with a recognition of title in the defendant as the true owner.  Her acquiescence in the plaintiff's occupation is amply supported by the evidence.  As the defendant knew all the facts relating to it and did not object thereto, greater notoriety

of possession on the part of the plaintiff would have been no more effectual as notice to the defendant. Moreover, occupation of the other land conveyed to the plaintiff as a homestead in connection with the land in question is further evidence, if any were needed, that she was occupying all the land she was led to understand she bought of the defendant as a home place or as a farm and using it as such. "The underlying principle on which is founded the rule requiring that possession must be open and notorious before it can be considered adverse to the real owner is that such character of possession is presumptive notice to the true owner of such possession and adverse claim. But the rule does not apply in cases where the party against whom the adverse claim is asserted has actual knowledge of such adverse possession. A possession which is adverse and actually known to the true owner is equivalent to a possession which is open and notorious and adverse." *McCaughn* v. *Young,* 85 Miss. 277, 293. See *Clark* v. *Gilbert,* 39 Conn. 94; *Steel* v. *Johnson,* 4 Allen 425; *Trotter* v. *Neal,* 50 Ark. 340; *Lasley* v. *Kniskern,* 152 Mich. 244; *Key* v. *Jennings,* 66 Mo. 356, 367; *Dausch* v. *Crane,* 109 Mo. 323, 336. It is, therefore, unnecessary to decide whether the plaintiff's possession of the land was sufficiently notorious to authorize a presumption that the defendant was notified of it. The evidence supports a finding that she had actual knowledge of it. It is not a matter of presumption but of actual fact found from competent evidence.

But it is claimed that the plaintiff's possession was not continuous, because there is no evidence that she cultivated lot C or pastured it every year or performed other acts on it amounting to notice to the defendant of her claim of ownership. It is to be noted that this argument does not take into account the fact that she had in effect color of title to this lot, as above shown, and that she occupied it as a part of her farm. If, therefore, there were intervals of a year or more when this particular lot was not actually used by her for agricultural purposes, it would not necessarily follow that she had abandoned it or that she was not in possession of it. The jury were warranted in finding that her possession of this part of her farm did not cease whenever she ceased to put it to any actual beneficial use, especially when there was no reëntry by the defendant. Under the circumstances of this case there is a presumption of fact that the absence of the plaintiff from the land or her failure to cultivate it for several months at a time was consistent with the continuity of possession necessary to give her a title by adverse possession. An omission to enter upon land for thirteen years, it has been held,

in the absence of the finding of an abandonment, authorized a presumption that the continuity of the original possession was not interrupted. *Langdon* v. *Templeton*, 66 Vt. 173. "The kind and frequency of the acts of occupancy, necessary to constitute a continuous possession, depend somewhat on the condition of the property, and the uses to which it is adapted in reference to the circumstances and situation of the possessor, and partly on his intention. If, in the intermediate time between the different acts of occupancy, there is no existing intention to continue the possession, or to return to the enjoyment of the premises, the possession, if it has not ripened into a title, terminates, and cannot afterwards be connected with a subsequent occupation so as to be made available toward gaining title; while such continual intention might, and generally would, preserve the possession unbroken. This principle is tersely stated in the civil law, thus: a man may retain possession by intention alone, yet this is not sufficient for the acquisition of possession." *Webb* v. *Richardson*, 42 Vt. 465, 473.

Whether the plaintiff at any time during the twenty year period renounced her claim to lot C and abandoned it, while still remaining the owner of the rest of the farm, is principally a question of intention, which is a question of fact for the jury. "And a mere interval in possession, though for several years, is not conclusive evidence of abandonment." Busw. Lim., ss. 239, 242; *Beasley* v. *Howell*, 117 Ala. 499. The very great improbability that the plaintiff would abandon her claim to a part of what she deemed to be her farm, which she believed was covered by her deed, is evidence that she did not intend to do so, because such an idea entertained by an owner of real estate is so strange and unusual as to demonstrate its absurdity. Moreover, she paid the taxes assessed on the land each year during the twenty years, and "this of itself is a potential fact in proof of a hostile assertion of title by the party paying the taxes." *McCaughn* v. *Young, supra*, 293. That the payment of the taxes by the plaintiff while temporarily absent from the land is strong evidence that she did not intend to abandon it cannot be doubted, and it also tends to show that she was claiming to be the owner of the land. Its tendency is to negative the idea of an abandonment and authorized the finding that her possession previously acquired was in effect continuous. *Farrar* v. *Fessenden*, 39 N. H. 268; *Webb* v. *Richardson*, 42 Vt. 465, 474; Busw. Lim., s. 248; Wood Lim. (3d ed.) 626. Whether the defendant knew the plaintiff was paying the taxes from year to year may not be very important, but if it is, it was competent for the jury to find that she knew she was

not paying them and probably knew or ought to have known that the plaintiff assumed that burden, and was thus asserting a hostile claim.

The defendant excepted to that part of the charge to the jury wherein the court said that "temporary absence, unless taken advantage of by the other side so as to repossess themselves of the property, does not, as a matter of law, bar the plaintiff from that continuation of possession necessary in order to acquire title by prescription. The possession once taken may be assumed to continue until dispossession is shown, or abandonment, or sufficient absence so that an abandonment may be reasonably inferred." It is obvious from the general principles of adverse possession that a temporary absence from the land, which under the circumstances is reasonable, does not as a matter of law interrupt the necessary continuity of possession. The effect of such absence upon that subject is ordinarily a question of fact, and not of law. It may be longer or shorter according to its reasonableness. Its actual duration is fixed by no general rule of law. Nor is the last sentence of the charge objectionable as applied to the case on trial. The jury were in effect told that if the defendant acquiesced in the plaintiff's claim and did not attempt to repossess herself of the land it might be found from the evidence that the plaintiff's possession continued during her temporary absence, unless they believed the plaintiff intended to abandon her possession. The charge left it to the jury upon all the evidence to pass upon the question presented; it was not a binding instruction. While it was brief, it was applicable to the evidence, and was correct in substance and effect. It did not mislead the jury to the prejudice of the defendant.

Evidence was introduced, subject to the defendant's exception, tending to show the value of the three lots of land, and their acreage, also that the plaintiff went into possession of all the lots under her deed as she undersood it. This evidence had a legitimate tendency to prove the character of the possession taken by the plaintiff, which was in accordance with the defendant's previous representations as to the boundaries of the land. The value and acreage of the lots may have had some bearing on the question of the plaintiff's credibility or that of her husband in their account of the transaction leading up to the sale, and of the probability that she would not have paid so much for the two lots alone. The evidence was admissible.

*Exceptions overruled: judgment on the verdict.*

All concurred.