THOMAS J. FORD *v.* JOHN P. WILSON.

1. STATUTE OF LIMITATIONS: TEN YEARS' ADVERSE POSSESSION CONFERS TITLE.— Ten years' actual adverse possession of land, vests in the possessor a full and complete title to it, upon which he may maintain an action of ejectment, against another, who may have entered. See Hutch. Dig. 829, ¿ 3; *Ellis* v. *Murray*, 28 Miss. R. 139.

2. SAME: ADVERSE POSSESSION, A QUESTION FOR THE JURY.—No precise general rule can be laid down, in reference to adverse possession, in all cases. Whether a possession be adverse, or not, depends upon the intention of the possessor, and the knowledge, or means of knowledge, on the part of the owner, and- is, therefore, a matter to be determined by the jury. See Ang. Lim. 447.

3. SAME: WHAT CONSTITUTES ADVERSE POSSESSION.—Visible and notorious occupation, with intent to claim against the world, constitutes adverse possession. So will any visible acts of ownership exercised over land, which, from their nature, indicate notorious claim of property in it, if continued for a long time, with the knowledge of the owner, and without interruption, or adverse entry, by him.

4. SAME: SAME.—Neither actual occupation, residence, or cultivation, is necessary, to constitute adverse possession, where the property is so situated as not to admit of any permanent useful improvement.

5. SAME: CASE IN JUDGMENT.—The *locus in quo* was in the actual occupancy of the defendant, and those under whom he claimed, for twelve years, and under a claim of title which was known to the owner; the improvements were then destroyed by fire, and, after that, the land was not actually occupied by any person, for six years, when the buildings were rebuilt, and actual occupation again commenced by the defendant. During the six years in which there was no actual occupation, the defendant's claim of title was open and notorious in the neighborhood. Held, that the adverse possession was continuous and uninterrupted, during the whole period.

ERROR to the Circuit Court of Yazoo county. Hon. William Cothran, judge.

Wilson, the defendant in error, instituted this action, on the 15th day of November, A.D. 1857, against Ford, the plaintiff in error, to recover possession of the northwest quarter of the northeast quarter, of section 3, township 11, in range 3 east, in Yazoo county; and also for damages, for the wrongful detention of the land.

Ford pleaded not guilty, and claimed, as a set-off to the demand for damages, the value of the improvements made by him.

On the trial, the plaintiff, in the court below, proved that the land sued for, was purchased from the United States, by one John Carson, in 1828. He then offered in evidence, a deed from said Carson, conveying the land to one William Wilson, dated 8th of June, 1832. This deed was not attested, or acknowledged, and the plaintiff offered to prove, in support of the deed, the following facts, viz.: that he was the only child and heir at law of said William Wilson, who died in 1844 or 1845; that Carson, the grantor, settled on the land in 1828, and that in 1832, Carson and Wilson both stated, that Carson had sold the land to Wilson, and, shortly afterwards, Carson removed from the land, and Wilson took possession; that, shortly after this, the witnesses heard one Samuel Ratcliffe, who owned some adjacent lands, and the said William Wilson, talking about an exchange of the *locus in quo*, for certain lands which Ratcliffe owned near said Wilson; and very soon after that conversation, Ratcliffe was in possession of the *locus in quo*, and retained the possession until his death, in 1836; that, after Ratcliffe's death, his heirs were in possession of the land in controversy in this suit, for several years, and during the lifetime of said Wilson, which occurred in 1844 or 1845; that the defendant, Ford, married the widow of said Wilson, and became administrator of his estate, and guardian of the plaintiff; that the lands, which Ratcliffe was to exchange with said Wilson, for the *locus in quo*, are part of the same lands since sold by the heirs of said Ratcliffe, to one J. N. Ratcliffe, and by the latter to the defendant, Ford.

The defendant also offered to prove, by the defendant Ford, that, as administrator of Wilson, the papers of said Wilson "were under his control," and that the instrument, or deed, offered in evidence by the plaintiff, was found, by witness, among other old papers of said Wilson, and that he knew nothing of its contents, until he had

bought the Ratcliffe tract of land; that he had put this land in cultivation, in 1852 or 1853, believing he had bought it from J. N. Ratcliffe, by a deed, which was offered in evidence. This deed conveys eleven eighths of land to Ford, by legal subdivisions, and is dated June 1st, 1852; it does not, however, embrace the land in controversy.

It was further offered to be proven, by Ford, that the deed from Carson to Wilson, had been in his possession until the trial, and that, under a *subpœna duces tecum*, he had produced it in court, and that plaintiff attained the age of twenty-one years in 1855.

It was also offered to be proven, by the probate clerk of Yazoo county, that he had made a full examination of the records of his office, and that there was no conveyance on record of said land, from said William Wilson, to any one.

To the introduction of all which, the defendant objected; but the objection was overruled, and the said deed, from Carson to Wilson, and the above evidence, was permitted to go to the jury, and the defendant excepted.

This was all the evidence offered by the plaintiff. The defendant then proved, by J. N. Ratcliffe, ᵗthat his father, Samuel Ratcliffe, took possession of the *locus in quo*, about the year 1834, cleared it, and cultivated it until his death, in 1836; "that the heirs of said Ratcliffe, some one or other of them, cultivated, or had others on the Ratcliffe place, which included the *locus in quo*, cultivating it, for ten or fifteen years; and that afterwards, most of the fences being burnt, the place was not occupied, for about six years, viz., from 1846 to 1852 or 1853, when he sold it to the defendant, Ford; that during this time (from 1846 to 1852 or 1853), it (the Ratcliffe place) was an open common, grown up in briers; that he thought he owned the land in controversy, and believed he had conveyed it to the defendant, Ford; that he sold eleven eighths of land to Ford, which, he understood, comprised the Ratcliffe place." Witness also stated, that William Wilson never occupied the land, from the time Samuel Ratcliffe first took possession, in 1834.

This was all the evidence offered by defendant. The court, at the instance of the plaintiff, instructed the jury, in substance: that, if they believed that the *locus in quo* was purchased by John Carson from the United States, and by him conveyed to William Wil-

Ford *v.* Wilson.

son, the ancestor of plaintiff, that the plaintiff is entitled to recover, unless it further appear, that said Wilson's title has been divested out of him, as conveyed by deed; that, if both parties claim title from a common source, and the plaintiff has shown a better title, from that source, they will find for him; and that an agreement to exchange lands is not good, unless reduced to writing; and if the defendant relies on such exchange being made, between William Wilson and Samuel Ratcliffe, he must prove that such agreement was consummated by a deed, conveying the land in controversy to said Ratcliffe.

At the instance of the defendant, the court instructed the jury, substantially: that the plaintiff, before he can recover, must show a good title in himself; that he cannot succeed in the weakness of his adversary's title; that twenty years' continuous adverse possession of the *locus in quo*, was a bar to the plaintiff's right; that ten years' continuous adverse possession, before the commencement of the suit, was also a bar; that if the adverse possession commenced in the lifetime of William Wilson, the statute ran, after his death, against his heir, although a minor; and that if Ratcliffe took possession of the *locus in quo*, under a parol agreement with William Wilson, to exchange other lands for it, and thereupon claimed and occupied the same as his own, his occupancy and possession was adverse to Wilson's.

The plaintiff had verdict and judgment, and the defendant moved for a new trial, which was refused; and he excepted, and sued out this writ of error.

The plaintiff in error made the following assignment of errors:

1st. The admission of the deed from Carson and wife to William Wilson.

2d. The refusal of the court to exclude said deed, on motion of the defendant below.

3d. The court erred in granting plaintiff's instructions.

4th. The court erred in refusing a new trial.

*Nye* and *Hill,* for plaintiff in error.

The supposed deed, from Carson to Wilson, was not admissible. Ancient deeds—that is, thirty years old—prove themselves, if possession accompany their date, and they be brought from what may

be regarded their proper repository. 1 Starkie's Ev. 344. This writing wants, at least, one of these requisites, viz., age; it is not thirty years old. But, concede that Wilson was rightfully the owner of the land, in 1834, by virtue of an exchange of lands with Carson, although no deed was ever executed, then the court erred in granting plaintiff's first and third instructions. The first instruction asserts, in substance, that the legal title of Wilson could be divested in no other way than by deed. This is certainly error. Wilson's title could be divested by the long-continued adverse possession of another, as effectually as by deed. This instruction overlooks entirely the possession of Ratcliffe, and those claiming under him, and narrows the inquiry of the jury to the single fact, whether Wilson ever executed a deed to Ratcliffe. Possession, notorious and adverse, is favored in the law, and all presumptions, and almost every variety of written evidence, will be presumed in its favor. *Grand Gulf Bank* v. *Bryan,* 8 S. & M. 234.

Statutes of Limitation, as to possession of land, are but conclusive presumptions established by the legislature.

Now, the plaintiff below is guilty of this palpable inconsistency: whilst claiming title without deed, he insists that his adversary can only show title by deed. His ancestor might acquire title without deed, but could not be divested of title, except by deed.

Now, this case, in our view, properly presents but this single question, viz.: Was the possession of Ratcliffe, from 1832 to 1834, adverse? If it was adverse, then Ford's title is good.

From 1832 to 1834, Ratcliffe had the land in possession, Wilson being alive and in the neighborhood. On the death of Ratcliffe, his possession and title was cast on his heirs. The statute commenced running against William Wilson in 1832, if Ratcliffe's possession was adverse, and, under the then law, twenty years' possession would have barred Wilson. The Act of 1844 shortened the limitation to seven years; and, in 1844, William Wilson was barred, under that act, in seven years, namely, on 24th February, 1851. But Wilson died in 1845; and, the statute having commenced to run against him in his lifetime, continues to run against his heir (the defendant in error); and he, too, was barred on that day. *Jackson ex dem. Colden et al.* v. *Robins,* 15 John. R. 169; and also *Jackson* v. *Moore,* 13 John. R. 513.

The possession of the elder Ratcliffe, his heirs, and the defendant, their grantee, must be all added, and constitute the statutory bar. The fact, that the lands were not cultivated from 1846 to 1852, does not interfere with the idea of a continued possession. It is true, that, occasional exercise of dominion, by unconnected acts of ownership, is not calculated to assert to the world a claim of right; for these acts look more like the "fitful invasions of a conscious trespasser, than the confident claims of a rightful owner;" but, the failure to cultivate, is no abandonment of possession once taken and long possessed. From 1842 to 1856, the heirs of Ratcliffe claimed the land, and sold it to J. N. Ratcliffe, and he to Ford.

There can be no question that Ratcliffe took possession, and claimed it under color or claim of title. Color or claim of title does not mean paper title. In *Jackson* v. *Ellis*, 13 John. R. 120, an entry upon land, under a parol gift, was held to be an entry under claim or color of title.

The question, whether the possession was or was not adverse, ought to have been left to the jury. 9 John. R. 102; 13 Ib. 496; 14 Mass. Rep. 55; 5 Wheat. R. 124; 8 S. & M. 77.

This first instruction cut off all such inquiry; and, whatever may have been the opinion of the jury on that point, they were compelled to find for the plaintiff under the first instruction, as there was no deed pretended to have been shown from Wilson to Ratcliffe. Defendant relied merely on the presumptions in favor of deed from lapse of time.

The same objection applies to the third instruction. It asserts that, if an agreement to exchange lands was made by Ratcliffe and Wilson, still the title was not divested, unless deeds were executed.

This proceeds on the idea, that title can only be acquired by deed, devise, or descent; whilst possession not only enables the possessor to defend, but, if sufficiently long continued, it will itself confer title, by which, if dispossessed, he could himself maintain ejectment. Under the Act of 1844, ten years' possession gave Ratcliffe, and those claiming under him, a title, by which they could maintain ejectment as plaintiffs. Such a suit they could have maintained on 24th February, 1854. As to adverse possession, see *Jackson* v. *Wheat*, 18 John. R. 40.

As to the second assignment of error, we will only refer to the brief of Gills and Wilkinson.

*Burrus* and *Armistead*, on same side.

The first error assigned in this case, is that the court permitted to go to the jury the deed or instrument from " Carson and wife" to " Wilson"—accompanied by the oral evidence of its execution— by which deed the *locus in quo* was conveyed.

This instrument was not acknowledged, in any sense of the term, by the vendors; nor were their signatures proven by any of the witnesses,—there being no evidence whatever establishing its execution ; the rule is well established that such an instrument is wholly inadmissible as evidence for the consideration of the jury.

Secondly. The deed of " Carson and wife to Wilson," not being established, either by acknowledgment or proof of handwriting, it does not establish itself by the presumption of its execution from lapse of time, because it fails in two essential particulars : 1st. The deed has not been accompanied by possession; nor does it come within the well-established rule of thirty years, which favors the presumption of its execution by lapse of time. *Roberts et al.* v. *Stanton*, 2 Munford's R. 129; *Barr* v. *Gratz*, 4 Wheaton, 213; 14 Mass. R. 257; 1 Bays R. 364; Norris Peake, 162; 12 U. S. Digest, 170, §§ 40, 41.

It will be seen from the evidence, that " Wilson" was out of possession in the year 1834, and that James Ratcliffe took possession at the same time, under their mutual agreement to exchange. Although there is no written evidence of this exchange, yet it is proven that Ratcliffe and his heirs occupied the *locus in quo* for more than eleven years, during the lifetime of William Wilson, and, in fact, until the sale of the land in controversy from Jackson N. Ratcliffe to " appellant," in 1852. According to the rule as laid down, there was neither possession nor time sufficient to establish the deed of " Carson to Wilson," which was dated in the year 1832.

We further think, that the instructions asked for, and granted by the court below for defendant, constitute a complete bar to plaintiff's recovery. Under the Statute of June 7th, 1822, twenty years' possession bars the right of recovery ; and, under the Act of 1844, ten years bars.the right of recovery. William Wilson died

in 1845; Ratcliffe and his heirs were then in possession; Wilson was out of possession more than one year after the Act of 1844; so, under either of the statutes, adverse possession was held against him. This court has frequently held, that when the Statute of Limitations commences to run, it does not stop for subsequent disabilities. 4 How. 31; 2 S. & M. 452; 8 Ib. 89.

*Gibbs* and *Wilkinson*, on same side.

The court below erred, in admitting what was alleged to be a deed from Carson and wife to William Wilson. There was no acknowledgment,—no subscribing witness,—no proof of the handwriting of the grantor, nor any proof of delivery. It is contended that this is an "ancient" deed, and proves itself. It does not come within the rule on that subject. An ancient deed must be thirty years old; and, besides that, there must be a continuous possession, or some continuous assertion of title for that length of time. Dudley (Geo.) R. 168; 1 Richardson, 54; 24 Pick. 71; 5 Barr, 92. Wilson's possession was for a very short time, perhaps not six months. Plaintiff's testimony entirely fails to bring it within the rule established by the cases on this subject.

We do not think the court should have given plaintiff's instruction. It is settled, it is true, that in deducing title in an action of ejectment, plaintiff need not go further back than the common source, if he shows paper title from that common source. This rule of evidence is established upon the principle of estoppel. A party is estopped by recitals in deeds through which he is compelled to deduce his title. Plaintiff claims here as heir to William Wilson. Defendant claims through no deed of Wilson, and has in no way asserted title under Wilson. He purchased from Jackson N. Ratcliffe. It is the only deed under which it is shown he claims. The principle of this instruction is only applicable to this defendant, so far as the deed of J. N. Ratcliffe is concerned. He is estopped to deny the title of his grantor, and did that deed recite that William Wilson was Carson's grantee, he would be estopped by it, and could not deny such recital. But it is contended, that defendant below purchased of J. N. Ratcliffe, and J. N. Ratcliffe's ancestor took possession under William Wilson. We think this immaterial, but it is not established by the proof. A witness says, William Wil-

son and James Ratcliffe had some conversation in reference to an exchange, and soon afterwards Ratcliffe took possession : there is no proof that an exchange was effected. It may be, Ratcliffe found Wilson had no title, and perhaps purchased Carson's title, or intended acquiring title by possession. If this transaction is an estoppel at all, it estops plaintiff from asserting title as heir to William Wilson, who had put Ratcliffe in possession. There is no privity at all between defendant below and James Ratcliffe, and he is in no way affected by it, if he did acknowledge title in Wilson. Defendant bought of the party in possession, without any notice of plaintiff's title. He bought that possessory right, and it is good against the world, until paramount title is shown to exist in the party suing. Plaintiff must recover upon the strength of his own title, and not the weakness of defendant's. If defendant had a deed from Carson and wife, older than the deed to William Wilson, it would not have been necessary for him to have produced it under the proof.

*R. S. Holt*, for defendant in error.

The plaintiff in error assigns the following errors, to wit :—

1. The admission of the deed of Carson to Wilson, as evidence to the jury, without proof of the handwriting of Carson.

2. The admission of the deed as evidence, without proof, as an ancient document.

3. That the Statute of Limitations barred the right of entry of the plaintiff.

4. That the instructions of the plaintiff below were given by the court.

We will consider these points in their order :—

I. " The admission of the deed, without proof of the handwriting of the grantor."

In answer to this we insist :—

1. That proof of the signature of the grantor, or of a subscribing witness to a deed, is not the only proof by which its existence or execution may be established. There is no technical rule of evidence which excludes other modes of proof. The admissions of parties, and other circumstances proven, may, and in many cases

Ford v. Wilson.

do, afford far more cogent evidence of the execution of a deed, than any direct proof of signature.

In this case, the age of the deed, the obscure and illiterate character of the grantor, who was but little known to any, and, at best, to only a few, who, like him, had passed away; and the possession of the deed by the defendant, rendered direct proof of the signature impossible. But the circumstantial evidence is overwhelming. The admission of the grantor, that he had sold—of the grantee, that he had purchased the land—the transfer of possession at the same time from the grantor to the grantee—the ancient appearance of the deed, and its date corresponding with these admissions and transactions—and the fact, that it was found in possession of the grantee, or among his papers, must convince every mind, as they convinced the jury, that the deed was, in fact, duly executed, as it purports to be, by Carson, in pursuance of the sale admitted to have been made. The court certainly did right to let the jury consider such evidence in connection with the deed.

2. But, if in this we are wrong, the deed and other proof were admissible, on the ground that both parties claimed under it.

Ford is shown to have claimed the land through the heirs of James Ratcliffe, who, as well as Ford, claimed that James Ratcliffe derived his title from William Wilson; and it is not shown, or pretended, that he had any other title than that vested in him by this deed from Carson, who was the first owner under the government.

If both parties thus claimed under this deed, further proof of its execution was not required; and the fact, that they thus claimed, could be shown by parol. 1 Greenl. Ev. § 571, and cases cited.

II. "The admission of the deed, without proof, as an ancient document."

To this we reply :—

That it was not thus admitted in evidence; nor does it so appear from the record. As an ancient deed, had it been thirty years old, no other proof than its production, and a corresponding possession, would have been necessary. Other proof was, in fact, required and made, and such as satisfied the jury.

III. "The Statute of Limitations barred the right of entry of Wilson."

We reply:—

1. That, as the refusal of the court to grant a new trial, is not assigned for error, it is difficult to conceive to what action of the court this assignment has reference. Questions of fact, affecting the case under the Statute of Limitations, were submitted to the jury, and found for plaintiff. The defendant could only bring his action before the court below for review, by a motion for a new trial; and could only bring the action of that court on this point, before this court for revision, by alleging the failure to grant a new trial, as cause of error.

2. But, if we are wrong in this, the facts and the law do not sustain the plaintiff in error in this assignment.

The adverse possession relied on is that of James Ratcliffe, commenced in 1834. Under the Act of 1822, then in force, twenty years were necessary to bar a right of entry in land; and fifty years' actual adverse possession, uninterruptedly continued during that period, conferred a title. Hutch. Code, 824–5. And, by the Act of 1844, the limitation upon the right of entry and of action is reduced to seven years; and ten years' actual adverse possession, uninterruptedly continued, confers title. But, under both of these statutes, it is not sufficient to bar the right of entry, or of action, that the owner should have been out of the actual possession of his land; or that the possession should have been vacant. It is necessary that there should, during the time limited, be some one in actual and continued possession of the land claiming adversely, against whom ejectment might have been brought.

If one had entered under the Act of 1822, and held land adversely for five years, and then left the possession vacant for ten years, and then re-entered, and held for five years, the true owner would not have been barred. In the first place, the two terms of possession could not have been united for any purpose. But, if they could, they could only be united so as to make ten years. The ten years, when the possession was vacant, could not be added; because, during that time, the right of action did not exist; there was no one in possession to be sued; and the owner has the whole time to sue or enter prescribed by the statute, where there is some one in possession to be sued or entered upon. The law obliges no

man to sue for or make actual entry upon his land, when the possession is vacant.

Apply this to the present case, considered as arising under the Act of 1822, and what are the facts?

Ratcliffe's possession commenced in 1834. This suit was commenced in 1857. Thus twenty-three years had elapsed. But, from 1846 to 1852 or 1853, a period of from six to seven years, the land was wholly unoccupied, and the possession vacant. Deduct this from the twenty-three years, and the bar is incomplete, under the Act of 1822. It is equally incomplete under the Act of 1844. From the date of this act, until the commencement of this suit, is from twelve to thirteen years. Deduct from this, then, six or seven years, when the possession was vacant, and the bar is not complete.

It is true, that the testimony was not entirely distinct and precise, as to the day or month on which the possession was vacated, or when Ford entered; but it went to the jury for their consideration, and their conclusions from it cannot be rejected. The most that can be said for plaintiff in error is, that these dates were doubtful upon the testimony; and, in this view, the finding of the jury must be conclusive.

IV. " The instructions given to the jury for the plaintiff."

These instructions are simple and clear. The legal proposition, or principle, expressed in each, is too familiar to need either illustration, or the support of' authority. Indeed, it is incredible, that any legal mind can really think them subject to exception or cavil. They not only express, with precision, well-known principles of law, but they are exactly applicable to the facts as proven, and as they were manifestly found by the jury.

This charge of error is, therefore, as unfounded as the others.

It is manifest, from the record, that the most exact justice has been done in this case. It is obvious that Carson conveyed the land to Wilson, by the deed read in evidence. It is equally obvious, that Wilson verbally agreed to exchange it with James Ratcliffe, for other lands near by; but the agreement was never reduced to writing, nor executed. Ratcliffe died, and his heirs disavowed the agreement, and conveyed the defendant, Ford, the very land which, under the agreement, was to have been given to

Wilson, in exchange for the *locus in quo*. Ford, in his turn, sold and conveyed it to the plaintiff; and now Ford, after having thus bought and sold the land that William Wilson was to receive in exchange, without color of title, attempts to hold, under the Statute of Limitations, the land that Wilson was to give; thus seeking to secure both of the subjects of the contract. This claim is made by him, under the Statute of Limitations, against his late ward, under a possession assumed by him while his ward was yet a minor, and after having, for many years, held and secreted the deed under which his ward derived title. The plaintiff, discovering the existence of the deed only at a late day, is wholly unable to see it, or exhibit it to others, for the purpose of verifying the signature,— Ford only producing it in court under compulsory process.

As before said, we think exact justice has been done, and done, too, in strict accordance with legal rules.

HARRIS, J., delivered the opinion of the court.

This is an action of ejectment, by the defendant in error, John P. Wilson, to recover, as heir-at-law to his father, William Wilson, the tract of land in controversy.

The bill of exceptions, appearing in the record, is singularly inconsistent and repugnant, and, in strictness, perhaps liable to serious objections. No point is, however, made by counsel on this ground, and we, therefore, pass these irregularities, with the single remark, that the indulgence heretofore · extended to them, is of very doubtful propriety; and, in the language of the chief justice, in *Haynie* v. *The State*, 32 Miss. R. 404, "A further departure from the rule of practice laid down by the statute, is not to be tolerated."

Regarding the bill of exceptions, as a bill taken to the refusal of the court to grant a new trial, on the motion of appellant, for the reason therein stated, that the jury found contrary to law and evidence : We will proceed to examine this ground of error.

The evidence shows, that the tract of land in dispute, was entered, according to the Act of Congress, by John Carson, in the year 1828. The plaintiff then introduced a deed from said Carson and wife, conveying the land in dispute to appellee's father, William Wilson; and proved that he is the only child and heir-at-law

of the said William Wilson, the grantee in the deed, who died in 1844 or 1845; that John Carson, the grantor, settled on the land, in 1828; that in 1832, Carson and Wilson both stated, that Carson had sold the land to William Wilson; and that, soon afterwards, the said William Wilson took possession of said land. The deed from *Carson* to Wilson, bears date in June, 1832.

The evidence on the trial, as the record shows, strongly tended to prove, that, by a verbal exchange of lands, between the said William Wilson and James Ratcliffe, the land now in dispute went into the possession of the said James Ratcliffe, who owned adjacent lands, and that the said Ratcliffe held possession thereof until his death, in 1836; that the said Ratcliffe's heirs took possession of the premises, after his death, and held them during the lifetime of the said William Wilson (appellee's father), who died in 1844 or 1845; that, after the death of the said James Ratcliffe, in 1836, one or more of his heirs cultivated the Ratcliffe place, including the land in controversy, or were in possession of it, for ten or fifteen years. Witness Blalock states, that the land which Wilson was to have received for the *locus in quo*, is part of the land since sold by the heirs of said James Ratcliffe, to J. N. Ratcliffe, and by him sold to said appellant, Thomas J. Ford.

Said Ford was examined as a witness, who proved his possession of the premises since 1852 or 1853; that he inclosed them, believing he had purchased them from J. N. Ratcliffe (his deed is on the record, bearing date the 16th January, 1852, showing that the land in controversy *was not* embraced therein). There was no evidence of a deed of conveyance of the *locus in quo*, by William Wilson, to *any one.*

J. N. Ratcliffe, after proving the possession of the *locus* for ten or fifteen years, by the heirs of James Ratcliffe, states that, afterwards, most of the fences being burnt down, the place was not occupied for about six years, from 1846 to 1852 or 1853, until he sold it to Thomas J. Ford, the appellant; that he thought he owned it, and believed he had conveyed it to Ford, by the deed read in evidence. He stated further, that William Wilson never occupied said land, from the time his father, James Ratcliffe, first occupied it, in 1834.

This action was commenced on the 15th day of November, A.D. 1857.

Waiving, then, all other questions, we regard the adverse possession of this defendant, and those under whom he claims, as conclusive, upon the rights of the plaintiff.

In the case of *Ellis* v. *Murray*, 28 Miss. R. 129, under the third section of the Act of Limitations, passed in 1844 (Hutch. Code, 829), it was held, that "actual adverse possession for ten years, vests a full and complete title to the land in possession; and a party, having had such possession, might sue for the recovery of it, at any time within the period limited in the first section, without further evidence of his title, than that he had had ten years in actual adverse possession; that it was intended to secure a right of property, by the possession of ten years."

It is insisted, however, that the statutory title, arising from ten years' actual adverse possession, did not vest in the appellant, in this case, because, notwithstanding the actual adverse possession from 1834 to 1846, in his favor, there was *then* a period of between six and seven years, after the fence was burned, when no one occupied the premises. Therefore, the resumption of possession, in 1852 or 1853, which, deducted from the whole possession proved, would not leave sufficient time for the operation of either the Act of 1822, or the Act of 1844.

The question of adverse possession, is one depending on the *intention* of the possessor, and the knowledge, or the means of knowledge, on the part of the owner of the land; and it is therefore a question of fact to be determined by a jury, as the best means of ascertaining the truth. Angel on Limitations, 477, notes 2 and 3, and numerous cases cited.

It is the occupation, with an intent to claim against the world, which renders the entry and possession adverse. The occupation must be visible and notorious, and not clandestine; so that the owner may be thereby notified to assert his title,—on the failure to do which, the statute interposes its bar, or divests him of title.

A continued residence on the land is not necessary,—it being sufficient that the land has been inclosed, in such manner as to give publicity to the possession. Ib. 482, and cases cited.

Making improvements, or receiving rents for a considerable

length of time, would be sufficient without residence. In the case of a dwelling-house, in a city, the possession of it continues so as to give the possessor the benefit of the Statute of Limitations, although the house may not have been occupied all the time by himself, or by a succession of tenants under him, without intermission; and direct proof of occupancy, during the whole period, is not necessary. Ib. 482.

The doctrine of the Supreme Court of the United States is, that to constitute an adverse possession, there need not be a fence, building, or other improvement made; and that it suffices, for this purpose, that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute.

That much depends upon the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it.

That it is difficult to lay down any precise rule, in all cases; but that it may be safely said, that when acts of ownership have been done upon land, which from their nature indicate a notorious claim of property in it, and are continued sufficiently long, with the knowledge of an adverse claimant, without interruption or an adverse entry by him, such acts are evidence of an adverse possession, for the consideration of the jury, &c.

That neither actual occupation, cultivation, or residence, are necessary to constitute *actual possession*, when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim. Ib. 192, and cases cited.

We think that the possession of the land for about twelve years, in the knowledge of William Wilson (as whose heir appellee seeks to recover), clearing, cultivating, and using it adversely to his rights, notoriously and openly, without any attempt upon his part to assert his title, affords the strongest possible presumption of his intended acquiescence. We think further, that in the absence of all evidence tending to show an abandonment of this notorious adverse possession, enjoyed for so long a period, under the very eyes of the appellee's father, by the appellants; that the accidental circum-

stances of the destruction of the fence, by fire, which for a time interrupted the active occupation of the premises, and rendered them unfit for use, is a circumstance of no material moment. And more especially so, as during that very time the possession and supposed ownership of those under whom appellants claim, was so notorious that the administrator on the estate of William Wilson, and the guardian of appellee, negotiated with the party in the adverse possession, for the purchase of this very land ; and supposed, until after the commencement of this action, that they had purchased it.

We regard the evidence as conclusive to establish, under the rules of law to which we have adverted, the actual adverse possession of the premises in dispute, by the appellant and those under whom he claims since the year 1832, a period much longer than that prescribed by either act relied on ; and vesting the absolute title in the appellant, under the Act of 1844, and the decision in *Ellis* v. *Murray*, 28 Miss. R. 129, already referred to.

With this view of the law, arising upon the facts in the record, we think the verdict of the jury was contrary to the law and evidence, and should have been set aside, and a new trial awarded on the motion therefor, in the court below. ·

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.