William C. McCaughn v. George Young.

1. Practice. *Peremptory instruction. Review.*

Upon review of the giving of a peremptory instruction, the party against whom it was given is entitled to have all the testimony in his favor considered as true; and the giving of such an instruction is proper only where admitting all the evidence to be true and all just inferences therefrom, it is insufficient to sustain a verdict contrary to the one directed.

2. Deed of Trust. *Trustee's power. Sale. Departure from terms of deed.*

If a trustee fail in any material particular, in making a sale under a deed of trust, to follow the terms of sale prescribed in the deed, the sale will be invalid. ·

3. Same. *Burden of proof. Presumption. Recitals in trustee's deed.*

The power of sale being shown to be in the trustee, his subsequent sale under the deed of trust is presumed to have been lawfully made, although the deed from him fails to recite the power under which he acted, or that he complied with the conditions of sale prescribed in the deed of trust; and the burden of proof to show invalidating irregularity is upon the party denying the validity of the trustee's sale.

4. Adverse Possession. *Elements. Code 1892, §§ 2730, 2734.*

The essential elements which are necessary to constitute an effective adverse possession are a hostile, actual, open and notorious, exclusive and continuous occupancy for the (Code 1892, §§ 2730, 2734) statutory period.

5. Same. *Actual occupancy. Notice. Hostility.*

One in possession of land, holding under a trustee's deed purporting to convey title thereto, who notified the grantor in the deed of trust that he had purchased and held the land as owner, occupied in hostility to said grantor, although the trustee's sale at

which he purchased was void because of some invalidating irregularity.

6. **Same.** *Wild land. Public acts of ownership.*

Actual occupation, cultivation, and residence are unnecessary to constitute actual possession, in the sense of being adverse to the true owner, where the land is so situate as not to admit of permanent, useful improvement, and the continued claim of possession is evidenced by public acts of ownership.

7. **Same.** *Payment of taxes. Cutting timber.*

One who, after receiving a deed to wild land not susceptible of occupancy, improvement, or cultivation, paid the taxes for a long term of years, during which the former owner neither paid taxes nor asserted any claim to the land, and used the timber from the land in the same way and to the same extent that he used timber from other lands belonging to him, with the knowledge of the former owner, and placed mortgages of record on the land, and offered the same for sale to the public, possessed the lands adversely to the former owner.

8. **Same.** *Actual notice.*

A possession which is adverse and actually known to the true owner is equivalent to a possession which is open and notorious and adverse.

9. **Same.** *Abandonment. Absence from state.*

The absence from the state of an adverse claimant of wild land does not constitute an abandonment by him of his possession, so as to break the continuity of the same, where such possession was open, notorious, and with the knowledge of the former owner, and under an instrument constituting color of title, and there was nothing to show an intention on his part to abandon the land, or a claim of title by the former owner during his absence.

From the circuit court of, first district, Coahoma county.

Hon. Samuel C. Cook, Judge.

Young, the appellee, was plaintiff, and McCaughn, the appellant, was defendant in the court below. The action was an ejectment. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The opinion states the facts of the case.

*D. A. Scott,* for appellant.

It should be borne in mind that the land in controversy was uncleared woodland until after the same was purchased in 1900 by appellant, and was not susceptible of being occupied as cleared or improved land would be. The appellant, and those through whom he claims title to the land, did, however, take possession of the same, and use and claim title to it, in the only possible way by which possession can be taken of the character of land in controversy. They paid taxes on the same for a period of more than fifteen years; it was assessed to them on the land assessment rolls; timber was cut from it from time to time and appropriated by them as owners; ownership was claimed and asserted, and they repeatedly offered the same for sale. The records show that Roselle was conveying the same from time to time, and it also appears that the appellee was fully aware of all of these facts long before and at the time of the purchase of the land by this appellant, and should not, therefore, be permitted, at this late date, to oust the appellant, who is a *bona fide* purchaser.

We now insist, with confidence, that the court below erred in granting a peremptory instruction directing the jury to return a verdict in favor of the appellee. The question as to whether the facts in the evidence did or did not constitute adverse possession for the length of time sufficient to toll the appellee's right of entry, being a question of fact, should have been submitted to the jury for their determination. We can scarcely conceive of how it is possible to prove adverse possession of wild, uncultivated woodland by evidence other than such as is developed by this record.

As to what does or does not constitute adverse possession of land depends largely upon its character, the uses and purposes to which it can be put or to which the owner may choose to put it; and we also insist that whatever is sufficient to cause the owner to inquire is amply sufficient, as to woodland, if such inquiry would lead him to a full knowledge of the facts. It is not

always necessary that there should be any actual occupation or enclosure to constitute adverse possession.

The supreme court of the United States has held—and, indeed, it is now considered a settled doctrine of that court—that to constitute an adverse possession there need not be a fence, building, or other improvement made, and that it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute; much depends upon the nature and situation of the property, the uses to which it can be applied, or to which the owner, or claimant, may choose to apply it; that it is difficult to lay down any precise rule in all cases, but that it may be safely said that where acts of ownership have been done upon land which, from their nature, indicate a notorious claim of property in it, and are continued sufficiently long, with the knowledge of an adverse claimant, without interruption or adverse entry by him, such acts are evidence of an ouster of the former owner, and an actual adverse possession against him, provided the jury shall think that the property was not susceptible of a more strict possession than had been so taken and held; that neither actual occupation, cultivation, nor residence is necessary to constitute adverse possession, when the property is so situated as not to admit of any permanent, useful improvement, and the continued claim of the party has been evidenced by public acts of ownership such as he would exercise over property which he claimed in his own right and would not exercise over property which he did not claim. *Ewing* v. *Barnett,* 11 Pet. (U. S.), 53; *Elliott* v. *Pearl,* 10 Pet. (U. S.), 442; *Barclay* v. *Howells, Lessee,* 6 Pet. (U. S.), 513.

See also the following authorities: *Royal* v. *Lessee of Lyle* (Ga.), 60 Am. Dec., 712; *Draper* v. *Shoot* (Mo.), 69 Am. Dec., 462; *Key* v. *Jennings,* 60 Mo., 367; *Mormant* v. *Eureka Co.* (Ala.), 39 Am. St. Rep., 45; Ewell on Ejectment, 725; *Sawyers* v. *Giddings,* 90 Mich., 50; *Coogar* v. *Morris,* 48 N. J. Law, 607; *Langworthy* v. *Myers,* 4 Iowa, 18; *Woods* v. *Montville,*

*etc., Co.,* 84 Ala., 560; *Clemmons* v. *Perry,* 34 Iowa, 564; *Beck* v. *Farr,* 66 Iowa, 684; *Forey* v. *Bigelow,* 56 Iowa, 381; *Welder* v. *Clark,* 74 Cal., 11; *Omaha, etc., Co.* v. *Barrett,* 3 Neb., 803; *Brown* v. *Clark,* 89 Cal., 196; *Brooks* v. *Bryan,* 18 Ill., 533; *Kerr* v. *Hitt,* 75 Ill., 51; *Coleman* v. *Billings,* 89 Ill., 183; *Downing* v. *Mays,* 46 Am. St. Rep., 896; *Vicksburg, etc., R. Co.* v. *Ragsdale,* 54 Miss., 200; *Willie* v. *Brooks,* 45 Miss., 542; *Nixon's Heirs* v. *Carcos,* 28 Miss., 414.

*O. G. Johnson,* on the same side.

We invoke against appellee the doctrine of *estoppel in pais,* or equitable estoppel. This doctrine, having its origin in equity, has by universal custom become a well-settled and important branch of the law. The fundamental principle upon which this doctrine is based is the equitable one of suppression of fraud and the enforcement of honesty and fair dealing. The term "equitable estoppel" was applied to it for the reason that the jurisdiction of enforcing this equity belonged originally to the courts of equity, and was not exercised by courts of law until a comparatively recent date. It has been said, however, in a modern case, that "these estoppels are now called equitable tribupels, not because their recognition is peculiar to equitable tribunals, but because they arise upon facts which render their application in the protection of right equitable and just." The doctrine of estoppel is applicable to the sale of land, as well as personal property, and is available in action at law for land. *Dickerson* v. *Colgrove,* 100 U. S., 578; *Kirk* v. *Hamilton,* 102 U. S., 68; *Pickard* v. *Sears,* 6 Am. & Eng. Ency. Law, 469.

The supreme court of the United States, in the case of *Dickerson* v. *Colgrove, supra,* has admitted that where the title to land is in question, the doctrine of equitable estoppel was available at law, though it states that "this is certainly not the common law." The old maxim that "estoppels are odious" is not properly applicable to equitable estoppels, as they are founded on the highest principles of morality and justice, and are re-

garded by all courts as tending to suppress fraud and injustice. Since this decision, the doctrine has become well established in all of the courts, both of law and equity, throughout the union.

These estoppels are not to be construed strictly, but are entitled to a fair and liberal application, in the same manner as other equitable doctrines which are admitted to suppress fraud and promote honesty and fair dealing. *Burkhalter* v. *Edwards,* 16 Ga., 573; *Shaw* v. *Bebee,* 35 Vt., 205.

The rule of law, as laid down in *Pickard* v. *Sears, supra,* is clear that where one by his words or conduct willfully or negligently causes another to believe the existence of a certain state of things and induces him to act upon that belief, so as to alter his previous position, the former is precluded from offering against the latter a different state of things as existing at the same time. The conduct of one on standing by, thus giving a kind of sanction to the proceedings, is in fact of such a nature that the opinion of the jury should be taken as to whether or not he had in point of fact ceased to be the owner. Conduct by negligence or omission, where there is a duty cast upon a person to disclose the truth, will frequently have the effect of estopping the party guilty of such negligence or omission from afterwards claiming his rights. *Caddy* v. *Owen,* 34 Vt., 598; *Smith* v. *Paysinger,* 2 Mill. (La.), 59.

One who has so conducted himself cannot afterwards gainsay the reasonable inference to be drawn from his words or conduct. *Cornish* v. *Abingdon,* 4 H. & N., 549.

This doctrine of equitable estoppel, as stated above, is a very broad one, instituted for the purpose of the suppression of fraud and dishonesty; and unless the courts at law are willing to abandon the duty of administering this equitable doctrine effectually in the suppression of fraud and unfair dealing, its application cannot be confined within the limits of any narrow technical definition, such as will relieve the court from looking, as in other cases depending on fraud and dishonesty, to the circumstances of each particular case. The court in the case of

*Swan* v. *Australasian Co.,* 7 H. & N., 603, makes the following statement regarding the general rule now acted upon with reference to estoppels by negligence and of the limitations of that rule. It states in part that "if he has led others into the belief of a certain state of facts, by conduct of culpable negligence calculated to have that result, and they have acted upon that belief to their prejudice, he shall not be heard afterwards as against such persons to show that the state of facts did not exist." In short, and in popular language, a man is not permitted to charge the consequences of his own fault on others, and complain of that which he himself brought about. However, after all is said, the exclusive warrant for an equitable estopped is that it is necessary to sustain the cause of right and justice. *Ferguson* v. *Millikin,* 42 Mich., 202.

We submit that in the cause at bar, the cause of right and justice would suffer irreparably if appellee herein be permitted, in the face of such negligence as he has shown, to now reclaim this property by tacitly denying the existence of proceedings which he will not deny, or has not denied, in the court, and which he has tacitly admitted by his conduct for the past fifteen years.

A grantor who knows that parties are in adverse possession, but never intimates that he has any title, cannot, to the prejudice of such parties, afterwards assert it. *Baker* v. *Humphreys,* 100 U. S., 494; *Collier* v. *Pfenning,* 34 N. J. Eq., 22; *Newman* v. *Hood,* 30 Mo., 207; *Lippman* v. *McCrawie,* 30 La. Ann., 307; *Railroad Co.* v. *Hamilton,* 59 Ga., 171; *Post* v. *Post,* 13 R. I., 495.

In the case at bar appellee makes no denial of the sale by the trustee, nor does he attempt to deny that the purchase money resulting from the sale of this land was applied to the payment of his debts, or that he received the benefit of such purchase money; and yet without offering to restore this money, appellee now seeks to recover the property. This, in view of the facts and

circumstances surrounding this case, would certainly be contrary to good conscience and repugnant to every sense of justice.

It has been held in *Thomas* v. *Poole,* 19 S. C., 323, and *Odell* v. *Rogers,* 44 Wis., 26, that where the court decrees the sale of an adult's land, and he assents to it, he is estopped. It makes no difference in the application of this principle where the proceedings under which this sale occurred are voidable, or wholly void, in consequence of the want of jurisdiction. *Sprague* v. *Shriver,* 25 Pa. St., 282.

The design and intent of the estoppel is to prevent the gross injustice that must necessarily arise where a man accepts all the benefits from an act that it is capable of conferring, and then sets it aside to the injury of third persons.

A defendant who has notice that his property is about to be sold by the officials of the law for the payment of his debts, and who makes no objection until an innocent purchaser has paid the purchase money and received a deed duly acknowledged, is estopped from objecting afterward, even if the judgment on which it was sold was paid; the payment cannot be set up against a purchaser. *Crawford* v. *Ginn,* 35 Iowa, 543; *Hereford* v. *Bank,* 53 Mo., 330.

A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute the fact in an action against the person whom he himself assisted in deceiving. *Gregg* v. *Wells,* 10 Ad. & Ell., 97.

The authorities are numerous to the effect that it is apparent fraud in one holding the legal title to land to allow a sale of this land to be publicly made without giving notice of his title to the intending purchaser, nor is it necessary to create an equitable estoppel that such owner should design to mislead. It is sufficient if the act was calculated to mislead, and has misled, a person acting upon it in good faith, and who has exercised reasonable care and diligence under all circumstances. *Banks* v. *Hazard,* 30 N. Y., 226.

We submit that the appellee herein cannot now be heard to deny the authority of the trustee, Johnson, for making this sale, inasmuch as said appellee, by his own act, enabled this trustee to hold himself out to the world as one duly authorized to sell, and hence cannot now question this authority.

*Mayes & Longstreet,* for appellee.

It is perfectly well settled law in this state that in an action of ejectment equitable estoppels are not available as matter of defense. If a defendant wishes to rely upon such ground, he must take refuge in the court of chancery. *Morgan* v. *Blewitt,* 72 Miss., 903; *Graham* v. *Warren,* 81 Miss., 330; *McLeod* v. *Bishop,* 110 Ala., 640.

Defendant offered in evidence a deed to A. B. Roselle, executed by one "F. C. Johnson, Trustee," on the 11th of January, 1887. Standing alone, this deed, containing no recitals and having nothing whatever to support it, is utterly futile and worthless. If it had contained proper recitals, it would have made out a *prima facie* case of authority to act; but it contains no recitals whatever, and gives no information whatever.

Even in the absence of proper recitals, extrinsic testimony might have been admissible to apply the deed and show the authority of the trustee to act; but there was no extrinsic testimony of any worth whatever. 28 Am. & Eng. Ency. Law, 825; 35 Cent. Dig., secs. 1119, 1121; *Graham* v. *Fitts,* 53 Miss., 307; *Tyler* v. *Herring,* 67 Miss., 169.

These two Mississippi cases first cited might seem to militate against the position taken above, and to hold that a trustee's deed raises a presumption that everything was regularly done; but they do not. The deeds under consideration in those cases showed on their face that they were trustee's deeds, and contained recitals which made out a *prima facie* case, whereas this deed does not.

This case falls far short of the requirements of the statute of limitation. The scrambling and uncertain and occasional acts

of possession indicated by this record are very far from being such acts of possession as would have started the statute of limitation at all. The appellant can make nothing out of a constructive possession, for the simple reason that in the case of wild land, not actually occupied, the law would contribute the constructive possession to the owner of the real title. *Hicks* v. *Steigleman*, 49 Miss., 377; *Paxton* v. *Valley Land Co.*, 68 Miss., 739; *Dixon* v. *Cook*, 47 Miss., 220; *Jones* v. *Gaddis*, 67 Miss., 761; *Railroad Co.* v. *Buford*, 73 Miss., 494.

Argued orally by *O. G. Johnson*, and D. A. Scott, for appellant, and by *Edward Mayes*, for appellee.

Truly, J., delivered the opinion of the court.

This is an action of ejectment instituted by George Young, appellee. On the trial hereof in the circuit court, plaintiff, having established his record title, closed his case. At the conclusion of the testimony for the defendant, McCaughn, appellant here, the court gave a peremptory instruction for the plaintiff, and this action of the court is assigned as error.

It is well settled in our state that, where a peremptory instruction is given, the losing party is entitled, upon the review of the action of the court, to have all facts in his favor considered as true. A peremptory instruction is proper only in cases where, with all the facts in evidence taken as true, with every inference from them, they fail to maintain the issue. *Whitney* v. *Cook*, 53 Miss., 551; *Railroad Co.* v. *Boehms*, 70 Miss., 11 (12 South. Rep., 23). Appellant, therefore, is entitled to have all the facts testified to in his behalf accepted as true upon our consideration of this record. Those facts are: That George Young, prior to 1885, had been the owner of the land in controversy; that about that date he executed a trust deed, or mortgage with power of sale, on the land to W. J. Crowley, beneficiary, and F. C. Johnson, trustee; that this instrument was foreclosed by public sale on January 11, 1887, at which sale A. B. Rozelle became the highest bidder, and the

land was struck off to him, and a deed executed by the trustee conveying the land; that Young was aware of the fact that his land was about to be sold, and was advised of Rozelle's intention to purchase, and, after the sale, was notified by Rozelle that he had bought the land and claimed it under the deed from the trustee; that thereafter Rozelle paid the taxes upon the land in his own name or that of his wife, entered into possession, erected a sawmill upon an adjoining tract, cut all the timber suitable for milling from the land, and sold the remainder to parties for cross-tie purposes; and he publicly offered the land for sale, and executed trust deeds thereon to secure a certain indebtedness which he owed. Under one of such trust deeds, after Rozelle had left the state in 1892, the property was sold and purchased by the Adams Machine Company, which remained in possession, paying taxes, and offering the same to the public for sale, until the year 1900, when appellee purchased from the machine company and entered into actual occupancy, cutting and deadening timber and clearing the land for cultivation, and had, prior to the institution of this suit, on the 29th of August, 1902, cleared seven and three-fourth acres and deadened half the entire tract. It was further in proof by several witnesses that Young knew of the claim that Rozelle made to the land, and knew that the land had been sold under the trust deed which he had executed in favor of Johnson, trustee; and that on one occasion, after appellant had entered into occupancy of the land, the appellee had a conversation with him, in which he spoke of desiring to purchase some land, but made no claim to having any interest in the title to this land, for which he afterwards instituted this suit.

The court, in its ruling on the motion to exclude the testimony in behalf of the defendant, stated that the proof failed to show that the defendant, McCaughn, had acquired title to the land, either by conveyance or adverse possession. To sustain this ruling of the court, it is said by counsel for appellee, as to the first ground, that the action of the court was correct

in holding that appellant had no title by conveyance, for the reason that the trust deed which the witnesses testified that Young had executed to Johnson, trustee, was not of record, and its loss not sufficiently proven. Under the general rule, as stated, the facts testified to in behalf of appellant upon every issue must be accepted on this hearing as true. We find, therefore, that the fact of the existence of the trust deed or mortgage is proven by the direct and positive testimony of the witness Rozelle, who stated that he had seen the instrument in question, had read it on the very day on which the land had been sold under its terms; that it was executed by George Young, whose signature he knew; that the beneficiary was Crowley, and the trustee Johnson; that he was familiar with the mode of foreclosure of such instruments, and, so far as he knew, the sale in question was regularly and formally made by public outcry to the highest bidder, and a deed executed by the trustee, in pursuance of such sale, and delivered to him as purchaser. This proof of existence, in the absence of all contradiction, was ample, and the proof of loss of the instrument, so as to account for its non-production and justify the admission of testimony of its contents, equally so. More than fifteen years after the foreclosure and sale under the lost instrument had elapsed before the institution of this suit. During that time the beneficiary had died, his storehouse burned, with a large part of his business papers, search had been made among all his papers known still to be in existence, the trustee had died, and actual search was made among all his papers where a trust deed might probably have been. In addition, search was made of all records of the proper chancery clerk's office, without success. Under such circumstances, in view of the great lapse of time and the various changes wrought by death, this proof was sufficient to make proper the admission of secondary evidence as to the contents of the lost instrument.

It is said, however, that, granting the existence and loss of the instrument, still the deed from the trustee to Rozelle, pur-

porting to convey the land in question, was void because of its failure to contain recitations showing the power under which the trustee made the sale, and that the terms and conditions of the instrument under which the sale was alleged to have been made had been substantially complied with. The deed under consideration simply states that the grantor Johnson, "as trustee," in consideration of a certain sum in cash paid to him "as trustee," conveys the land now in controversy to Rozell, the grantee. The deed contains no reference to any grant of power to the trustee authorizing him to act, and there is no recital of the performance of any of the formalities usually incident to foreclosure of similar trust deeds, or mortgages with power of sale, such as are always inserted by the careful conveyancer. The established rule is that a trustee who undertakes to execute a trust vested in him by a sale of the trust estate must follow the mode, manner, and terms prescribed by the deed under which he claims grant of power, and the sale will not be valid if there is any material failure in this regard. If, as a matter of fact, the directions of the trust deed be adhered to in all substantial matters, the mere failure to recite in the deed the power under which the trustee acted, or that the conditions of the trust in conducting the sale were observed, will not, as a matter of law, annul the sale or invalidate the deed executed by the trustee to the purchaser. 2 Jones on Mort., sec. 1889. When a deed executed by a trustee purports to convey as trustee a certain estate, the presumption of law is, not only that the recitals of the deed are true, but that all essential conditions were complied with in making the sale. When such a deed is sought to be avoided on the ground of irregularity or failure to comply with the terms of the power in making the sale, the burden, at all events after proof of power in the trustee, is upon the party seeking to avoid the deed to prove the existence of such invalidating irregularity. When a sale in pais is made by a trustee under an instrument conferring upon him a power of sale on the happening of certain contingencies, the rule is

thus stated in *Enochs* v. *Miller,* 60 Miss., 21: "The making of the deed is *prima facie* evidence that the sale was properly made, and will throw upon him who attacks or resists it the burden of showing the contrary." *Graham* v. *Fitts,* 53 Miss., 307; *Tyler* v. *Herring,* 67 Miss., 169 (6 South. Rep., 840; 19 Am. St. Rep., 263). The case of *McMahan* v. *B. & L. Ass'n,* 75 Miss., 969 (23 South. Rep., 431), cited by appellee, is no authority for a contrary view, for in that case the sale was made "in disregard of the plain provisions of the instrument," and that fact was shown affirmatively by the record. This is in accord with the view expressed in *Enochs* v. *Miller, supra,* which is supported by the great weight of authority. *Burke* v. *Adair,* 23 W. Va., 139; *Farrar* v. *Payne,* 73 Ill., 82; *Lunsford* v. *Speaks,* 112 N. C., 608 (17 S. E., 430); 2 Jones on Mort., secs. 1830-1895. We refer specially to the recent case of *Atkinson* v. *College,* 54 W. Va., 32 (46 S. E., 253), where, after a full discussion of the rights of parties growing out of sales by trustees, the conclusion of the court is thus stated: "Hence, as against a third party, one in no way connected with the deed of trust except by his act of purchase, and in no way charged with the responsibility for the regularity of the proceedings, nor having power of control over them, nor affected with any notice of irregularities or equities, reason, justice, and authority make it manifest that the complainant must take upon himself the burden of showing wherein the sale is illegal, or an equity against the purchaser arises in his favor. It is the assertion of a cause of action, the whole burden of which is upon the plaintiff." In the instant case it was incumbent upon the appellee, if he desired to resist the effect of the deed from Johnson, trustee, to Rozelle, to have proven that the sale in pursuance of which the conveyance was executed was void by reason of a failure on the part of the trustee to follow in some essential particular the terms prescribed by the trust deed. This he did not undertake to do.

There being no evidence of any extrinsic matters affirmative-

ly showing any lack of regularity in the sale by the trustee, appellant was entitled to have the following facts considered as established and true: That appellee had executed a trust deed to Johnson, trustee; that the land in controversy was included therein; that the instrument was foreclosed, and the deed in evidence executed in pursuance thereof. These facts, joined to the legal presumption of correctness which attached to the deed of the trustee, warranted the submission of the issue to the determination of the jury. In the absence of all denial, it was error to peremptorily charge against appellant on this ground. He was an innocent purchaser without notice, in possession, and is protected by his deed until that is overthrown.

Nor can we sustain the action of the court in withdrawing from the consideration of the jury the evidence tending to prove appellant's title by adverse possession. The essential elements which are necessary to constitute an effective adverse possession are generally recognized. The occupancy must be hostile, actual, open and notorious, exclusive and continuous for the statutory period. Accepting as true all the facts showing possession by appellant and his vendors, and giving him the benefit of all legal inferences to be drawn from the evidence, does that possession fulfill the tests applied by the general rule announced? That the occupancy of Rozelle and those claiming under him was hostile to any claim of title by appellee is obvious. Rozelle entered into possession under a deed conveying the specific property, and notified the grantor in the deed of trust, the former owner of the land, that he had purchased and held the land as owner. Even had it been shown that the sale conducted by Johnson, trustee, was void on account of some irregularity of which the purchaser had no knowledge, the deed which he delivered in consideration of the *bona fide* payment of the purchase money was sufficient basis of title to render the subsequent occupancy of the purchaser hostile to the former owner of the land. In order to constitute adverse possession the occupancy must, generally speaking, be visible and noto-

rious, with intent to claim title as against the world. But in view of the fact that property was often of such a character and so situated that actual occupancy was impracticable, if not impossible, the rule was gradually relaxed as to such property. The true doctrine, and the one now generally recognized, is thus stated by Harris, J., in *Ford* v. *Wilson,* 35 Miss. 490 (72 Am. Dec., 137) : "That neither actual occupation, cultivation, or residence is necessary to constitute actual possession when the property is so situated as not to admit of any permanent, useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right and would not exercise over property which he did not claim." *Worthley* v. *Burbanks,* 146 Ind., 534 (45 N. E., 779) ; *Hubbard* v. *Kiddo,* 87 Ill., 578 ; 3 Washburn on Real Property, sec. 1965. "It is not necessary that the occupation should be such that a mere stranger passing the land would know that some one was asserting title to a dominion over it. It is not necessary that the land be cleared or fenced or that any building be put upon it. The possession of land cannot be more than the exercise of exclusive dominion over it." 2 Wood on Limitations, sec. 267. In the instant case the record shows that the lands in controversy, from 1885 until 1900, when appellant entered into actual occupancy, were what are denominated "wild lands," lying in the midst of a vast area of swamp woodland, not susceptible of occupancy, improvement, or cultivation, or of any remunerative or productive use. The test of what constitutes adverse possession of such property must of course be different from that which would be appplied with reference to cultivated lands or property susceptible of actual use and occupation. The question is, Did the person claiming to hold adversely exercise toward the property the same character of control which he used toward property actually his and which he would not have used over property which did not belong to him ? In this case Rozelle had the land assessed to him, and

he and those claiming under him, for a long term of years, paid all the taxes on the property without question from appellee or any one else. This of itself is a potential fact in proof of a hostile assertion of title by the party paying the taxes.

Discussing the question of the payment of taxes as evidence of adverse possession, the supreme court of the United States says: "Payment of taxes, as described in the above statement of facts, is very important and strong evidence of a claim of title; and the failure of the plaintiff's predecessors to make any claim to the lot, or to pay the taxes themselves, is some evidence of an abandonment of any right in or claim to the property. In *Ewing* v. *Burnet,* 36 U. S. (11 Pet.), 41 (9 L. ed., 624), it was held by this court that the payment of taxes on land for twenty-four successive years by the party in possession was powerful evidence of the claim of right to the whole lot upon which the taxes were paid. The same principle is held in *Fletcher* v. *Fuller,* 120 U. S., 534, 552 (7 Sup. Ct., 667, 676; 30 L. ed., 759, 764). It is some evidence that the possession was under a claim of right and was adverse." *Holtzman* v. *Douglas,* 18 Sup. Ct., 65 (42 L. ed., 466). The facts of this case bring it plainly within that statement. Appellant and his predecessors paid the taxes for a long term of years, during which the appellee neither paid taxes nor asserted any claim to the land. In addition to the payment of taxes, Rozelle used the timber from the land in the same way and to the same extent that he used timber from other lands admittedly his; he sold timber from the land to others with the knowledge of appellee; he placed mortgages of record on the land, and offered the same for sale to the public. This was the same character of control which he exercised over other property which he owned, and was the only manner in which any one could, at the time in question, have asserted ownership or exercised dominion over property of the same character similarly located.

The underlying principle on which is founded the rule requiring that possession must be open and notorious before it

can be considered adverse to the real owner is that such character of possession is presumptive notice to the true owner of such possession and adverse claim. But the rule does not apply in cases where the party against whom the adverse claim is asserted has actual knowledge of such adverse possession. A possession which is adverse and actually known to the true owner is equivalent to a possession which is open and notorious and adverse. *Dausch* v. *Crane,* 109 Mo., 336 (19 S. W., 61); *Clark* v. *Gilbert,* 39 Conn., 94; *Alexander* v. *Polk,* 39 Miss., 737; *Ford* v. *Wilson, supra.* The doctrine is concisely stated in this form: "If the owner have actual knowledge that the possession is adverse to his title, the occupancy need not be open, visible, and notorious. Notoriety is important only where the adverse character of the possession is to be brought home to the owner by a presumption." See 1 Cyc., p. 999, par. c, and cases cited.

The appellee insists that the absence of Rozelle from the state for several months prior to the date at which the Adams Machine Company acquired his title to the land was an abandonment of the possession, and constituted a break in the continuous occupancy necessary to ripen a claim into a valid title. The record contains no circumstance from which an intention to abandon his dominion over the land or surrender his claim of title thereto can be inferred. "Possession of land is acquired by an entry on it, with the intention to possess it, and is lost by leaving, with an intention to abandon it." *Harper* v. *Tapley,* 35 Miss., 506. Rozelle's entry and possession was not stealthy or clandestine, but open and notorious, with the knowledge of the appellee. His possession was exclusive, undisputed, and adverse, and under a muniment of title which, even if voidable, constituted a color of title, and the record shows no such state of facts as warranted the trial court in charging as an undisputed fact that the required continuity of occupancy had not been established. "Possession of land once acquired is not lost by a removal from it, if the party removing has color

of title and by his acts manifests an intention still to claim and use it." *Harper* v. *Tapley, supra; Ford* v. *Wilson, supra; Aldrich* v. *Griffith,* 66 Vt., 402 (29 Atl., 376); *Crispen* v. *Hannaran,* 50 Mo., 549; *Moore* v. *Hinkle,* 151 Ind., 346 (50 N. E., 822). The testimony of Rozelle, standing as it does uncontradicted, shows no intention on his part to surrender his possession, and he continued to treat the land as his own by paying taxes and offering the same for sale. Nor did appellee consider the land as abandoned; for he made no effort to re-enter, and, according to the statement of appellant, impliedly acquiesced in and recognized appellant's assertion of ownership —made no claim of title even when appellant had entered into actual occupancy and was engaged in deadening the timber and clearing the land.

Accepting the facts stated in the record as true, and giving the appellant the benefit of the legal inference justly deducible therefrom (as, in view of the peremptory instruction, we are bound to do), we are constrained to reverse the judgment and award a new trial. We confine ourselves to a consideration of the two grounds on which the trial judge based his action in granting the peremptory instruction, without passing upon other assignments of error not necessarily involved in this decision.

*Reversed and remanded.*